## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

**DAN L. VACEK**             )
    **Plaintiff**        )
                           )
**vs.**                     )      **C.A.No. 08-221 Erie**
                           )
**PENNSYLVANIA JUDICIAL CONDUCT** )
**BOARD, et al.,**          )      **District Judge McLaughlin**
                           )      **Magistrate Judge Baxter**
    **Defendants.**       )


### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION


## I.       RECOMMENDATION

_____It is respectfully recommended that the motion to dismiss filed by Defendants City of Erie Traffic Court/City of Erie, Erie Police Department, John Doe #1/Erie Police Department, John Doe #2/Erie Police Department, John Doe #3/Erie Police Department, Lt. Liebel, Sgt. Talarico, and Sgt. Dahlstrand [Document # 83] be granted.  The Clerk of Courts should be directed to terminate these Defendants from the docket.

It is further recommended that Count 12 of the Amended Complaint alleging the "Denial of Property Rights to Cause of Action in violation of 42 U.S.C. § 1982" against all named Defendants in both their individual and official capacities be dismissed for failure to state a claim.


## II.      REPORT

### A.       Relevant Procedural History

This case was originally filed in the United States District Court for the Middle District of Pennsylvania on June 30, 2008 and was transferred to this Court by Order of U.S. District

Court Judge Yvette Kane on August 6, 2008.

Plaintiff, non-prisoner and acting *pro se*, has sued numerous individuals and entities alleging that his constitutional rights have been violated in numerous ways.  Plaintiff's original complaint was one hundred sixty-six pages long and was accompanied by almost four hundred pages of exhibits.  See Documents ## 1, 3, 4, 5, and 6.  Named as Defendants are: the Pennsylvania Judicial Conduct Board; Joseph A. Massa; the Pennsylvania State Police; Lieutenant Michael Gillelan; Ashley E. Wheeler; the Pennsylvania Motor Vehicle Department; Janet L. Dolan; John Doe #1 MVD; Magisterial District Court First Ward; Susanne C. Mack; Magisterial District Court Sixth Ward; Dominicak D. DiPaolo, City of Erie Traffic Court/City of Erie; the Erie Police Department; John Doe #1 Erie Police Department; John Doe #2 Erie Police Department; John Doe #3, Erie Police Department; Lieutenant Liebel-222; Sergeant Dahlstrand-227; and Sergeant Talarico-290.

On July 6, 2009, Plaintiff filed an Amended Complaint. Document # 30.  The Amended Complaint is more prolix than the original complaint, but adds no new Defendants.[1]  Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986 and 1988.[2]  As relief, Plaintiff seeks monetary damages and certain declaratory relief.[3]

---

[1]  Plaintiff's Amended Complaint contains almost 200 paragraphs of allegations and includes page after page covering Plaintiff's theories on constitutional law and history.  The Amended Complaint numbers 226 pages in length and is in clear violation of Federal Rule of Civil Procedure 8(a) which mandates that a party set forth his claims in "a short and plain statement."  See Wesley v. Vaughn, 2003 WL 1493375, at *2 (E.D. Pa.) (discussing the dismissal of a "lengthy and rambling pleading consisting of 125 pages of narrative" for violation of Rule 8(a)).

[2]  Plaintiff also asserts claims under 5 U.S.C. § 552a, the Privacy Act.  However, that statute only applies to agencies of the federal government, not state or local agencies.  See Banda v. Camden County Board of Chosen Freeholders, 2009 WL 1561442, at *2 (D.N.J. May 29, 2009).

[3]  A portion of Plaintiff's prayer for relief reads: "a declaratory judgment on whether or not further relief is or can be sought on the matters of controversy cited/argued with Section II and III herein and thereby demands a trial by jury of twelve regarding the cited/argued elements
(continued...)

2

Defendants are divided into three groups: 1) City of Erie Traffic Court/City of Erie, Erie Police Department, John Doe #1/Erie Police Department, John Doe #2/Erie Police Department, John Doe #3/Erie Police Department, Lt. Liebel, Sgt. Talarico, and Sgt. Dahlstrand (hereafter, "City Defendants") are represented by the City of Erie Solicitor's Office; 2) the Pennsylvania Judicial Conduct Board, Joseph Massa, Magisterial District Courts for the First and Sixth Wards, Susanne C. Mack, and Dominick D. Dipaolo (hereafter, "Judicial Defendants") are represented by the Administrative Office of the Pennsylvania Courts, and 3) the Pennsylvania State Police, Lt. Gillelan, Ashley Wheeler, the Pennsylvania Motor Vehicle Department, and Janet Dolan (hereafter, "Commonwealth Defendants") are represented by the Office of the Attorney General of the Commonwealth of Pennsylvania.

Each group of Defendants has filed their own motion to dismiss. This Report and Recommendation is limited to the motion to dismiss filed by the City Defendants, who seek the dismissal of this entire action against them. Document # 83. Despite being given the opportunity and several extensions of time to do so, Plaintiff has not filed an Opposition to the pending motion to dismiss filed by City Defendants.

### B.    Standards of Review

#### 1.    *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Bierley, 141 F.2d 552,

---

[3](...continued)
within Section II and III. Once a declaratory decree presents itself the Plaintiff hereby respectively (sic) requests a trial by jury of twelve on all cited claims." Document # 30, page 84.

555 (3d Cir. 1969)(petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 295 (D.C.Cir. 1992); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2.    Motion to dismiss pursuant to 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 95 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 556, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. Aug. 245, 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). A plaintiff's factual allegations "must be enough to raise a right to relief above the speculative level." Twombly, 550

U.S. at 556.  Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face."  Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 22, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element."  Phillips, 515 F.3d at 232, quoting Twombly, 550 U.S. at 556 n.3.

Recently, the Third Circuit expounded on the *Twombly/Iqbal/Phillips* line of cases:

> To prevent dismissal, all civil complaints must now set out sufficient factual matter to show that the claim is facially plausible.  This then allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct.
>
> * * *
>
> After *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief.  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to show such an entitlement with its facts.  As the Supreme Court instructed in *Iqbal*, where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief.  This plausibility requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11(3d Cir. 2009).

The City Defendants have attached numerous exhibits in support of their motion to dismiss and Plaintiff has attached hundreds of pages of exhibits to his Amended Complaint. However, the use of these exhibits by this Court does not automatically convert the motion to dismiss for failure to state a claim into a motion for summary judgment.  See Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 560 (3d Cir. 2002) ("...certain matters outside the

body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of an Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to an Federal Rule of Civil Procedure 56 motion for summary judgment.").

### C.    The Claims against the City Defendants

In light of Haines v. Kerner, and it progeny, this Court will attempt to summarize the allegations against the City Defendants from the massive pleading. The allegations of Plaintiff's Amended Complaint stem from a domestic dispute between Plaintiff and his former spouse which occurred in New Mexico in December of 1999 and eventually resulted in the issuance of a "no bond hold" felony warrant against Plaintiff.   Apparently, that warrant remained outstanding at the time of Plaintiff's subsequent traffic stops and arrests in Erie, Pennsylvania in October and November of 2005, and in January of 2006.  Document # 30, ¶¶37-38, 42-43, 46-52.  Plaintiff contests the validity of that New Mexico warrant.

Plaintiff alleges that on October 12, 2005, he was "illegally arrested" by Defendant Liebel and the Erie Police Department and held overnight in order to be extradited back to New Mexico.  Id. at ¶46.  Next, Plaintiff alleges that on October 19, 2005, John Doe #1(a police officer of the Erie Police Department) communicated with some unnamed individual by text message regarding the warrant against Plaintiff.  Id. at ¶47.

On October 29, 2005, Plaintiff was subject to an "illegal traffic stop" by Defendant Talarico.  Plaintiff was cited for "failure to change address" and Defendant Talarico informed Plaintiff that he was a "felon."  Id. at ¶48.

On November 21, 2005, Plaintiff alleges that a "legitimate traffic stop" occurred and Plaintiff was cited for "one way road way" and was again informed by an unnamed police officer that Plaintiff was a felon.  Id. at ¶49.

On January 15, 2006, Plaintiff was involved in an automobile accident while driving a rental vehicle.  Defendant Police Officer Dahlstrand investigated the accident and both parties

were allowed to leave the scene of the accident without citations being issued.  Defendant

Dahlstrand informed Plaintiff that he was a felon. During the investigation or shortly thereafter,

John Doe #2 contacted the rental car company to inform them that Plaintiff's driver's license

was suspended and/or not current.  Id. at ¶50.

Around March of 2006, John Doe # 3 contacted an acquaintance of the Plaintiff

regarding activity that occurred in the Summit Township area adjacent to the residence of

Plaintiff.  Id. at ¶ 51.

In September of 2006, Plaintiff learned that four traffic citations were issued after the

January 15, 2006 traffic accident.  Because the Traffic Court had been closed due to budget cuts,

Plaintiff's case/s were transferred to a Magisterial District Justice and Plaintiff made payment

arrangements.  In October of 2006, Plaintiff received his first paper copies of the four citations

issued from the January 2006 accident.  Plaintiff explains:

> Now that the original yellow copies of the accident specific traffic citations
> finally surfaced (produced by a Defendant Magisterial District Court Sixth Ward
> court clerk) the documents and overall sequence of events (apparently originating
> back to the original October 12-13, 2005 illegal arrest, incarceration and planned
> extradition and Plaintiff declared by Defendant Erie Police Department to be a
> "felon") clearly indicated actions should have been taken at much earlier date or
> time, but were overlooked, forgotten, accidentally missed or intentionally missed
> by the prior court of jurisdiction, Defendant City of Erie Traffic Court/City of
> Erie, and the present day local law enforcement, Defendant Erie Police
> Department.  As a result of the Plaintiff's record collection and document
> assessment effort (i.e. the five subject traffic citations), and the original court of
> jurisdiction no longer in evidence, the situation reflected the Plaintiff at no time
> was allowed/granted a plea hearing, for any of the citations, so the Plaintiff
> attempted to file the necessary documents with Defendant Magisterial District
> Court Sixth Ward titled 'motion to vacate judgments of convictions' on January
> 10, 2007; Defendant Magisterial District Court Sixth Ward and Defendant
> Dipaolo refused to file the documents on January 10, 2007, exhibit 58.  Because
> Defendant Dipaolo's declaratory decree, due process and such violations, the
> Plaintiff then engaged with the clerk of court at the Pennsylvania Court of
> Common Pleas, about two hours later on January 10, 2007, and after some
> exchange there was the appearance the Pennsylvania Court of Common Pleas
> would be willing to file the Plaintiff's documents so Plaintiff could be heard.  On
> January 26, 2007, the Plaintiff filed two documents with the Pennsylvania Court
> of Common Pleas, titled 'motion for nunc pro tunc – vacate judgments of
> convictions', in order to be heard on five traffic citations.

Id. at pages 33-34.

7

Thereafter, Plaintiff attempted to appeal his conviction on these traffic citations[4], and was ultimately unsuccessful.

In the Amended Complaint, Plaintiff specifically raises the following Counts against the City Defendants:

> Count 3 - Libel, Charged by Information, Malicious Prosecution and Conspiracy
>
>> Naming Liebel and John Doe #3 in their official capacities, the Erie Police Department, as well as other non-City Defendants
>
> Count 5 - Seizure and Conspiracy in violation of §1983
>
>> Naming Liebel and John Doe #3 in their official capacities, and Erie Police Department, as well as other non-City Defendants
>
> Count 6 - Seizure and Conspiracy in violation of §1985(2) - (Obstruction of Justice)
>> Naming Liebel and John Doe #3 in their official capacities, and Erie Police Department, as well as other non-City Defendants
>
> Count 7 - Seizure and Conspiracy in violation of §1985(3)
>
>> Naming Liebel and John Doe #3 in their official capacities, and Erie Police Department, as well as other non-City Defendants

--------

[4] The record before this Court includes the Summary Appeal Docket from the Erie County Court of Common Pleas which indicates that Plaintiff has received the following traffic citations:

| | |
|---|---|
| "Failure to Notify Change in Address" | October 29, 2005 |
| "Drive Wrong Way" | November 21, 2005 |
| "Vehicle Turning Left" | January 15, 2006 |
| "Driving w/o a License" | January 15, 2006 |
| "Oper. Veh. w/o Req'd Finan.Resp." | January 15, 2006 |
| "Careless Driving" | January 15, 2006 |

Document #83-2, page 2.

Count 8 - Seizure and Conspiracy in violation of §1986

> Naming Liebel and John Doe #3 in their official capacities, and Erie Police Department, as well as other non-City Defendants

Count 9 - Slander, Malicious Activity and Harrassment in violation of §1983

> Naming John Does #1, #2, and #3, Talarico, Dahlstrand, and Liebel, all in their individual capacities, John Doe #1 in his official capacity, and City of Erie Traffic Court/City of Erie, as well as other non-City Defendants

Count 11 - *Monell* claim in violation of §1983 and 5 U.S.C. §552a(d)(e)

> Naming Liebel and John Doe #3 in their official capacities, and City of Erie Traffic Court/City of Erie and the Erie Police Department, as well as other non-City Defendants

Count 12 - Denial of Property Rights in violation of §1982

> Naming all Defendants in their individual and official capacities

Id. at pages 59, 63, 35, 67-68, 70, 73, and 81, et seq.

### D.    Immunity

#### 1.    Eleventh Amendment Immunity for Individuals acting within their official capacities

The majority of Plaintiff's claims against the individual City Defendants are specifically alleged in their official capacity. See Counts 3, 5, 6, 7, 8, 11 and 12 (individual and official). In their motion to dismiss, the individual City Defendants argue that the Eleventh Amendment precludes such claims against them in their official capacities.

A state may be sued in federal court only if (1) the state has waived its Eleventh Amendment immunity (see, e.g. Kentucky v. Graham, 473 U.S. 159 (1985)), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits (see, e.g. Board of Trustees of the University of Alabama v. Garrett, 531 U.S. 356 (2001)). Generally, the Eleventh Amendment proscribes actions in the

federal courts against states, their agencies, and state officials acting within their official capacities.  Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania);  Mt. Healthy City Board of Education v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity); Holland v. Taylor, 604 F.Supp.2d 692 (D.Del 2009) ("As a matter of law, suits against individuals acting in their official capacities are barred by the Eleventh Amendment.").

        The claims seeking monetary relief from the individual Defendants in their official capacities should be dismissed.  Those claims are: Count 3 for "Libel, Charged by Information, Malicious Prosecution and Conspiracy" against Defendants Liebel and John Doe # 3; Counts 5, 6, 7 and 8 for Seizure and Conspiracy under §§ 1983, 1985(2), 1985(3) and 1986 against Defendants Liebel and John Doe #3; Count 9 for Slander, Malicious Action and Harrassment under § 1983 against John Doe #1; and Count 11 under *Monell* against Defendant Liebel and John Doe #3.  Additionally, Count 12 for Denial of Property Rights is alleged against all Defendants in both their official and individual capacities, but to the extent that the claim is alleged against Defendants in their official capacities, it should be dismissed.[5] [6]

---

        [5]  To the extent that Plaintiff may seek to amend his complaint to seek monetary damages from these individual City Defendants in their **individual** capacities, such an amendment would be futile.  See discussion herein.

        [6]  While the Eleventh Amendment immunizes state officials from monetary damages, such immunity generally does not apply to claims for injunctive relief against state officials to enjoin conduct alleged to be an ongoing violation of the Constitution or federal law.  Ex Parte Young, 209 U.S. 123, 129 (1908).  In order to overcome immunity, the complaint must allege an ongoing violation of federal law and seek injunctive relief on those specific grounds.  Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996); Verizon Maryland Inc., v. Public Service Commission of Maryland, 535 U.S. 635 (2002).  Plaintiff's claims against these individual City Defendants are necessarily based on their prior actions.  Because there is no ongoing violation of federal law upon which to base any claims for injunctive relief, any such claim against the individual City Defendants in their official capacities should be dismissed.

2.      **Eleventh Amendment Immunity for Defendant Erie Police**
        **Department**

Plaintiff also raises claims against the Erie Police Department. A municipality or county

will generally not be held liable for civil rights violations unless the plaintiff establishes that the

challenged conduct was a result of a government entity's official policy, custom or practice.

Monell v. Department of Social Services, 436 U.S. 658, 694 (1978).[7]   To state a viable claim

under  §1983 against the Erie Police Department[8], Plaintiff must allege that he was injured as the

result of a "policy or custom" of the entity-defendant.  Id. at 691.  A "[p]olicy is made when a

'decisionmaker possess[ing] final authority to establish municipal policy with respect to the

action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895

F.2d 1469, 1480 (3d Cir. 1990).   A custom "can be proven by showing that a given course of

conduct, although not specifically endorsed or authorized by law, is so well-settled and

permanent as virtually to constitute law." Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir.

1990).

Here, a review of Plaintiff's asserted *Monell* claim against the Erie Police Department is

appropriate:

A.      **Officials With Authority Approved the Unconstitutional Conduct of**
        **Their Subordinates**

---

[7]   Entities acting under color of state law generally cannot be held liable under 42 U.S.C.
§ 1983 on a *respondeat superior* theory.  Monell, 436 U.S. 658 (superiors of line officers who act
in violation of constitutional rights may not be held liable on a theory of vicarious liability
merely because the superior had a right to control the line officer's action).  See also Robinson v.
City of Pittsburgh, 120 F.3d 1286, 1293-1295 (3d Cir. 1997) (to hold police chief liable under §
1983 for violating female subordinate officer's rights, she was required to prove that he
personally participated in violating the her rights, that he directed others to violate her rights, or
that he had knowledge of and acquiesced in his subordinates' violations).


[8]   Although Plaintiff purports to bring his *Monell* claim against individual City
Defendants Liebel and John Doe #3, such a claim is only appropriate as to the government entity
Defendants as *Monell* specifically held that municipalities can be subject to liability for civil
rights violations.  See Moriarty v. Rendell, 2009 WL 1458201, at * 3 (M.D.Pa., May 26, 2009)
("The *Monell* standard, however, applies to the liability of municipalities, not individuals.").

168. Upon information and belief, the Supervisor Defendants having supervisory authority, within their respective State of Pennsylvania law defined entity, had contemporaneous knowledge that the arrest, detainment, and planned extradition of the Plaintiff violated United States and State of Pennsylvania constitutions and laws.

169. It would have been plainly obvious to a reasonably staffed supervisory and/or elected official that such conduct would lead to deprivation of the Plaintiff's constitutional rights.

170. Upon information and belief, the Supervisory Defendants nevertheless agreed, approved and ratified, by some means, conduct that was originally initiated by the [allegedly unqualified New Mexico judge]. Just because one, few or some New Mexico based authorities did not operate in accordance with United States and State of New Mexico constitutions and laws it does not allow Pennsylvania supervisory Defendants [...] Liebel, John Doe #3, Erie Police Department, City of Erie Traffic Court/City of Erie [...] to also violate United States and State of Pennsylvania constitutions and laws.

171. As a direct and foreseeable consequence of these supervisory authority decision, Plaintiff was pursued, seized and deprived of his rights under [the state and federal constitutions].

* * *

**C.    Officials with Authority Established Policy(ies) or Custom(s) Permitting Prosecutors and Law Enforcement Personnel to Publish Inaccurate Data/Information That Implied Criminality and Guilt**

176. Upon information and belief, as early as March of 2005 [...] Liebel, John Doe #3, [...] Erie Police Department, City of Erie Traffic Court/City of Erie [...] consistently failed to take adequate or meaningful steps to discipline John Does #1, #2, and #3, Talarico, Dahlstrand [...] and/or correct the behaviors, terminate employments and/or invoke proper judiciary discipline.

177. By these omissions, these officials endorsed and ratified [...] John Does #1, #2, and #3, Talarico, Dahlstrand's unconstitutional conduct, established a custom or practice of targeting pro se litigants, parties, petitioners, respondents and such of other state civil court cases for harsh or disproportionate treatment, or established a custom or practice of failing to correct the unconstitutional conduct of Pennsylvania [...] law enforcement [...].

178. In these circumstances, it would have been plainly obvious to a reasonable person of authority that the decision to continue to allow John Does #1, #2, and #3, Talarico, and Dahlstrand [...] in positions of state and federal data repository use, data entry and such would lead to deprivations of Plaintiff's constitutional rights.

179. As a direct and foreseeable consequence of this official action, Plaintiff was deprived of his rights. [...]

**D.    Officials with Authority Failure to Supervise, Mentor, Coach and Train**

**Subordinate Led to Violations of Plaintiff's Constitutional Rights**

180. John Does #1, #2, and #3, Talarico, Dahlstrand ... were law enforcement personnel staffed by the ... Erie Police Department ...

181. Prior to or during placing them in their roles the Supervisory Defendants demonstrated reckless or callous indifference to the rights of legal United States citizens by failing to provide John Does #1, #2, and #3, Talarico, Dahlstrand ... with adequate training regarding the legal and constitutional dimensions of their positions.

182. During their tenures as city ... law enforcement personnel ..., John Does #1, #2, and #3, Talarico, Dahlstrand ... demonstrated a consistent pattern of publishing written statements expressing conclusions of guilt and illegality.

183. The Supervisor Defendants demonstrated reckless or callous indifference to the rights of civil litigates [sic] by failing to take meaningful action to correct the conduct.

184. From as early as October 12, 2005, acting in their roles as county ... law enforcement personnel, took no action and/or published a series of written statements expressing the Department's official conclusion of "domestic relate [sic] issues ... and various other things", suspension of a Pennsylvania drivers license which never existed, "multi state offender", final dispositions not updated timely, not accurate, or simply not eliminated and such, and to be determined occurrences.

185. The Supervisory Defendants know of should have known about these no [sic] actions, written statements and to be determined items but demonstrated reckless disregard or deliberate indifference by failing to take prompt and meaningful preventative or remedial action.

186. The Supervisory Defendants' actions evidenced reckless and callous disregard for deliberate indifference to Plaintiff's constitutional rights.

187. As a direct and foreseeable consequence of the supervisory Defendants' failures to train and supervise John Does #1, #2, and #3, Talarico, Dahlstrand ..., Plaintiff was deprived of his rights ...

Document # 30.

A plaintiff must show that the challenged incident resulted from an existing, unconstitutional policy attributable to the municipal policymaker. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985). Merely alleging that a municipality has "engaged in a policy, custom, and practice" that violated plaintiff's federal rights is precisely the formulaic recitation of legal elements that the Twombly Court determined was insufficient to defeat a motion to dismiss. See generally, Miller v. North Belle Vernon Borough, 2009 WL 112854 (W.D.Pa., Jan. 15,

13

2009).  While a plaintiff need not plead detailed facts regarding the alleged policy, custom, or practice, he must, in the very least, plead facts that: (1) put Defendants on notice with regard to the basis for the alleged policy, custom, or practice; and (2) "show" that he is entitled to relief as a result of that policy, custom, or practice. See Twombly, 550 U.S. at ___, 127 S.Ct. at 1964.

Plaintiff's Amended Complaint contains no allegations that any policy of the Erie Police Department led to any claimed injuries.  The Erie Police Department is named as a defendant simply as the entity-in-charge.

This Court liberally construes Plaintiff's Amended Complaint as raising a custom or practice allegation regarding the Erie Police Department's failure to train its employees. Municipal liability can be based upon a government entity's failure to adequately train its employees.  City of Canton v. Harris, 489 U.S. 378 (1989).  In order to establish liability on a failure to train claim under § 1983, a plaintiff "must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."  Conn v. Bull, 307 Fed. Appx. 631, at *3 (3d Cir. Jan.21, 2009) quoting Giles v. Davis, 427 F.3d 197, 207 n.7 (3d Cir. 2005).[9]

Here, despite being allowed to amend his complaint and despite this Court's very generous and liberal reading of the *pro se* complaint, Plaintiff has not alleged any causal connection between the Erie Police Department's alleged failure to provide any specific training

---

[9]  In discussing the standard for failure to train in the context of a prison suicide, the Third Circuit explained:

> "the plaintiff must (1) identify specific training not provided that could reasonably be expected to prevent the suicide that occurred, and (2) must demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to whether the detainees succeed in taking their lives."

Woloszyn v. County of Lawrence, 396 F.3d 314, 325 (3d Cir. 2005) quoting Colburn v. Upper Darby Township ("Colburn II"), 946 F.2d 1017, 1029-30 (3d Cir. 1991).

14

to its employees and/or how the lack of training "reflects deliberate indifference to whether the alleged constitutional deprivations occurred."  See Conn.

Accordingly, the *Monell* claim against the entity City Defendants should be dismissed for failure to state a claim.

### 3.    Immunity of "City of Erie Traffic Court/City of Erie"

The claims against "City of Erie Traffic Court/City of Erie" should be dismissed because the activities of that entity were conducted pursuant to the direction of the magisterial district court.  The actions of the former Traffic Court are insulated from liability by judicial immunity. Judicial immunity is an "immunity from suit, not just from an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991).  Judicial officers are immune from damage suits arising out of their official duties.  Stump v. Sparkman, 435 U.S. 349 (1978); Piskanin v. Hammer, 2005 WL 613644 (E.D.Pa., 2005) (applying judicial immunity to "district justice").[10]  "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority...."  Sparkman 435 U.S. at 356.  See also Benn v. First Judicial

---

[10]    Additionally, quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, are also immune from suit.  See Gallas v. Supreme Court of Pennsylvania, 211 F.3d 760, 772-73 (3d Cir. 2000) (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir. 1969) (holding that prothonotary, acting under court direction, was immune from suit).  The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir. 1992).  See also Johnson v. Kegans, 870 F.2d 992, 995 (5th Cir. 1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").  Quasi-judicial absolute immunity is also available to those individuals who perform functions closely associated with the judicial process.  Marcedes v. Barrett, 453 F.2d 391 (3d Cir. 1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); Henig v. Odorioso, 385 F.2d 491, 494 (3d Cir. 1967) (holding that judiciary employees executing judicial orders are immune from suit); Washam v. Stesis, 2008 WL 2600310 (E.D. Pa. 2008) (applying quasi-judicial immunity to jury coordinator and support officer); Davis v. Philadelphia County, 195 F.Supp.2d 686 (E.D. Pa. 2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

District, 426 F.3d 233 (3d Cir. 2005) (applying Eleventh Amendment immunity to courts).

Accordingly, the claims against this entity should be dismissed.


**E.    The favorable termination requirement of <u>Heck v. Humphrey</u>**

The majority of Plaintiff's claims against the individual City Defendants are specifically brought against them in their official capacities.  The only claims against the individual City Defendants in their individual capacities are 1) Count 9 for "slander, malicious activity and harrassment" in violation of §1983 against John Does #1, #2, and #3, Talarico, Dahlstrand, and Liebel; and, 2) Count 12 for the "denial of property rights" in violation of §1982 against all Defendants[11].  These claims should be dismissed as they are precluded by the favorable termination requirement of  Heck v. Humphrey [512 U.S. 447 (1994)] and its progeny.

In <u>Heck</u>, the Supreme Court held that an individual cannot maintain a §1983 action for damages under the civil rights laws if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence ... unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." 512 U.S. at 487.  The Third Circuit

---

[11]  This claim is also brought against all Defendants in their official capacities.  However, the official capacity claims should be dismissed as discussed above.   To the extent that Plaintiff may seek to further amend his Complaint to raise the official capacity claims against the individual City Defendants in their individual capacities, such an amendment would be futile and should be denied. Federal Rule of Civil Procedure 15(a) states that "leave [to amend] shall be freely given when justice so requires."  Fed.R.Civ.P. 15(a).  "In the absence of any apparent or declared reason--such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (interpreting Federal Rules of Civil Procedure).  An amendment would be futile when the complaint, as amended, would fail to state a claim upon which relief could be granted.  <u>In re NAHC, Inc. Securities Litigation</u>, 306 F.3d 1314, 1332 (3d Cir. 2002). An amendment to name these same Defendants in their individual capacities is precluded by <u>Heck</u>, is possibly barred by the statute of limitations and the doctrine of collateral estoppel (as addressed in the motion to dismiss), and may be barred by qualified immunity.  The merits of Count 12 are addressed separately herein.

recently explained:

> "To determine whether a § 1983 claim should be dismissed as an impermissible collateral attack on an underlying conviction, 'a district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.'"

Grier v. Klem, ___ F.3d ___, ___, 2010 WL 92483, at *3 (3d Cir. Jan.12, 2010) quoting Heck,

512 U.S. at 487.[12]

In Count 9, Plaintiff alleges that the individual City Defendants "instituted or

participated in the institution of traffic charges against the Plaintiff."  Document # 30, Amended

Complaint, ¶ 154.  Further, Plaintiff alleges that these individual Defendants:

> [...] demonstrated malice, spite, ill-will, and wanton disregard for Plaintiff's rights by conspiring to manufacture and/or by manufacturing false and misleading statements, misuse of federal information technology systems, false interstate text messages, conducting illegal traffic stops, slander, false traffic citation charges, traffic citation charges never issue nor served, conducting investigation(s) with no jurisdiction with knowledge that such malicious activity would be used to advance and perpetuate criminal and/or traffic proceedings against the Plaintiff.

> [...] Plaintiff was unreasonably and unlawfully subject to numerous traffic citation default judgments of convictions and prosecution associated with the initiating October 12/13, 2005 illegal arrest, detainment and processed for extrication (sic).

Id. at ¶¶ 155, 156.

Here, the underlying traffic citations have not been reversed or set aside.  A finding by

this Court that these Defendants violated Plaintiff's constitutional rights by way of the

---

[12]  The Supreme Court has summarized this so-called "favorable termination requirement" in the prisoner context by explaining that a "state prisoner's § 1983 action is barred (absent prior invalidation)-no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)-if success in that action would necessarily demonstrate the invalidity of confinement or its duration." Wilkinson v. Dotson, 544 U.S. 74, 81-82 (2005).  See also Hill v. McDonough, 574 U.S. 73 (2006); Muhammad v. Close, 540 U.S. 749 (2004).

17

"institution of the traffic charges" against him would "necessarily imply the invalidity" of the traffic citations and the subsequent court proceedings.

Accordingly, the motion to dismiss by the City Defendants should be granted as to Count 9 as it is precluded by <u>Heck v. Humphrey</u>.


**F.      Denial of Property Claim**

At Count 12, Plaintiff raises a claim of "denial of property rights to cause of action in violation of 42 U.S.C. §1982."  Document # 30, page 81.

Section 1982 provides that "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold and convey real and personal property."  42 U.S.C. §1982.  The statute protects a citizen's property rights "against interference from any source whatever, whether governmental or private, and it encompasses every racially motivated refusal to sell or rent." <u>Jones v. Alfred H. Mayer Company</u>, 392 U.S. 409, 422-24 (1968).  In order to prevail on a § 1982 claim, "a plaintiff must demonstrate an intent to discriminate based on race."  <u>Homan v. City of Reading</u>, 963 F.Supp. 485 (E.D.Pa., 1997); <u>City of Memphis v. Greene</u>, 451 U.S. 100, 120 (1981).

In the present case, Plaintiff has not alleged any fact indicating purposeful discrimination, intent to discriminate based on race, or actual discrimination based upon race by Defendants in his voluminous Amended Complaint.  Accordingly, this claim should be dismissed for failure to state a claim.


**III.      CONCLUSION_____**

For the foregoing reasons, it is respectfully recommended that the motion to dismiss filed by Defendants City of Erie Traffic Court/City of Erie, Erie Police Department, John Doe #1/Erie Police Department, John Doe #2/Erie Police Department, John Doe #3/Erie Police Department,

18

Lt. Liebel, Sgt. Talarico, and Sgt. Dahlstrand [Document # 83] be granted.  The Clerk of Courts should be directed to terminate these Defendants from the docket.

It is further recommended that Count 12 of the Amended Complaint alleging the "Denial of Property Rights to Cause of Action in violation of 42 U.S.C. § 1982" against all named Defendants in both their individual and official capacities be dismissed for failure to state a claim.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  No extensions of time will be granted.  Failure to file timely objections may constitute a waiver of appellate rights.  See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: February 16, 2010