IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| DAN L. VACEK ) | |
|     Plaintiff ) | |
| ) | |
| vs. ) | C.A.No. 08-221 Erie |
| ) | |
| PENNSYLVANIA JUDICIAL CONDUCT ) | |
| BOARD, et al., ) | District Judge McLaughlin |
| ) | Magistrate Judge Baxter |
|     Defendants. ) | |


**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Court grant the motion to dismiss [ECF No. 86] filed by Defendants Pennsylvania Judicial Conduct Board, Joseph A. Massa, Jr., Esq., Magisterial District Judge Dominick D. DiPaolo, Magisterial District Court Sixth Ward, Magisterial District Judge Suzanne C. Mack, and Magisterial District Court First Ward.  It is further recommended that the Court grant the motion to dismiss [ECF No. 105] filed by the Pennsylvania State Police, Lt. Michael Gillelan, Ashley E. Wheeler, the Pennsylvania Motor Vehicle Department, and Janet L. Dolan. The Clerk of Courts should be directed to close this case.


**II.    REPORT**

    **A.     Relevant Procedural History**

This case was originally filed in the United States District Court for the Middle District of Pennsylvania on June 30, 2008, and was transferred to this Court by Order of U.S. District Court Judge Yvette Kane on August 6, 2008.

1

Plaintiff, non-prisoner and acting *pro se*, has sued numerous individuals and entities alleging that his constitutional rights have been violated in a myriad of ways. Plaintiff's original complaint was 166 pages long and was accompanied by almost 400 pages of exhibits. [See ECF Nos. 1, 3, 4, 5, and 6.] On July 6, 2009, Plaintiff filed an Amended Complaint. [ECF No. 30.] The Amended Complaint is more prolix than the original complaint, but adds no new Defendants.[1] Plaintiff asserts claims under 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1986 and 1988.[2] As relief, he seeks monetary damages and what he characterizes as declaratory relief.[3] The named Defendants are divided into three groups:

(1) City of Erie Traffic Court/City of Erie; Erie Police Department; John Doe #1/Erie Police Department; John Doe #2/Erie Police Department; John Doe #3/Erie Police Department; Lt. Liebel; Sgt. Talarico; and Sgt. Dahlstrand (hereafter, "City Defendants"). The City Defendants, who have been dismissed from this action, were represented by the City of Erie Solicitor's Office;

(2) the Pennsylvania Judicial Conduct Board; Joseph A. Massa, Jr., Esq., who is the Chief Counsel for the Judicial Conduct Board; the Magisterial District Courts for the First and Sixth Wards; Magisterial District Judge Suzanne C. Mack, who is

---

[1] Plaintiff's Amended Complaint contains almost 200 paragraphs of allegations and includes page after page covering his theories on constitutional law and history. The Amended Complaint numbers 226 pages in length and is in clear violation of Federal Rule of Civil Procedure 8(a) which mandates that a party set forth his claims in "a short and plain statement." See Wesley v. Vaughn, No. 99-1228, 2003 WL 1493375, at *2 (E.D. Pa. Mar. 19, 2003) (discussing the dismissal of a "lengthy and rambling pleading consisting of 125 pages of narrative" for violation of Rule 8(a)).

[2] Plaintiff also asserts claims under 5 U.S.C. § 552a, the Privacy Act. However, that statute only applies to agencies of the federal government, not state or local agencies. See Banda v. Camden Cnty. Bd. of Chosen Freeholders, No. 08-5115, 2009 WL 1561442, at *2 (D.N.J. May 29, 2009).

[3] A portion of Plaintiff's prayer for relief reads: "a declaratory judgment on whether or not further relief is or can be sought on the matters of controversy cited/argued with Section II and III herein and thereby demands a trial by jury of twelve regarding the cited/argued elements within Section II and III. Once a declaratory decree presents itself the Plaintiff hereby respectively (sic) requests a trial by jury of twelve on all cited claims." [ECF No. 30 at 84.]

the judge for Magisterial District Court 06-1-01 in Erie County, Pennsylvania; and Dominick D. DiPaolo, who is the judge for Magisterial District Court 06-1-05 in Erie County, Pennsylvania (hereafter, "Judicial Defendants"). The Judicial Defendants are represented by the Administrative Office of the Pennsylvania Courts; and,

(3)   the Pennsylvania State Police; Lt. Michael Gillelan; State Police "staffed employee" Ashley E. Wheeler; the Pennsylvania "Motor Vehicle Department"[4]; and, its Director, Janet L. Dolan (hereafter, "Commonwealth Defendants"). The Commonwealth Defendants are represented by the Office of the Attorney General of the Commonwealth of Pennsylvania.

Each group of Defendants filed their own motion to dismiss. On February 2, 2010, I issued a Report and Recommendation [ECF No. 108] that the Court: (1) grant the motion to dismiss filed by the City Defendants; and (2) dismiss Claim 12 of the Amended Complaint, which alleged the "Denial of Property Rights to Cause of Action in violation of 42 U.S.C. § 1982" and which Plaintiff brought against all named Defendants in both their individual and official capacities. By Memorandum Order dated March 4, 2010 [ECF No. 110], that Report and Recommendation was adopted by the Court, as modified therein. The City Defendants were dismissed from this case and Count 12 was dismissed in its entirety against all Defendants in both their individual and official capacities.

This Report and Recommendation addresses the motion to dismiss filed by the Judicial Defendants [ECF No. 86] and the motion to dismiss filed by the Commonwealth Defendants [ECF No. 105]. They seek in their respective motions the dismissal of this entire action against them. Plaintiff has not filed an Opposition to either motion to dismiss.

---

[4] Plaintiff names as a Defendant the Pennsylvania "Department of Motor Vehicles," which the Court construes as the Pennsyvlania Department of Transportation, Bureau of Driver Licensing (of which Defendant Janet L. Dolan is the Director).

3

**B.     Standards Of Review**

    **1.     *Pro se* pleadings**

*Pro se* pleadings, "however inartfully pleaded,"must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520-21 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance"); Smith v. U.S. District Court, 956 F.2d 647 (7th Cir. 1992); Freeman v. Dep't of Corr., 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990) (same). Because Plaintiff is a *pro se* litigant, this Court may consider facts and make inferences where it is appropriate.

    **2.     Motion to dismiss pursuant to 12(b)(6)**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007) (rejecting the traditional 12(b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by Plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp.,

394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  See also McTernan v. City of York, Pennsylvania, 577 F.3d 521, 531 (3d Cir. 2009) quoting Iqbal, ___ U.S. at ___, 129 S.Ct. at 1949 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").  "Factual allegations must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief."  Smith v. Sullivan, No. 07-cv-528, 2008 WL 482469, at *1 (D.Del. Feb. 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element."  Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556 (internal quotations omitted).

Recently, the United States Court of Appeals for the Third Circuit expounded on the Twombly/Iqbal/Phillips line of cases:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis.  **First, the factual and legal elements of a claim should be separated.  The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.  Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."  In other words, a complaint must do more than allege the plaintiff's entitlement to relief.**  A complaint has to "show" such an entitlement with its facts.  As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility

5

> of misconduct, the complaint has alleged - but it has not 'show[n]' - that the pleader is entitled to relief." This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d. 203, 210-11 (3d Cir. 2009) (internal quotations and citations omitted) (emphasis added).

In ruling upon the Defendants' motions to dismiss, the Court may consider and take judicial notice of the docket sheets and court records in Plaintiff's cases before the state court, specifically those in the Court of Common Pleas of Erie County at docket number CP-25-SA-0000031-2007 and the Superior Court of Pennsylvania at docket number 882 WDA 2007. Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002) ("certain matters outside the body of the complaint itself, such as exhibits attached to the complaint and facts of which the court will take judicial notice, will not trigger the conversion of a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss to a Federal Rule of Civil Procedure 56 motion for summary judgment."); Anspach v. City of Philadelphia, 503 F.3d 256, 273 n.11 (3d Cir. 2007) (court may take judicial notice of public records when ruling on Rule 12(b)(6) motions to dismiss).

### C. The Allegations Against the Judicial Defendants

The allegations of Plaintiff's Amended Complaint stem from a domestic dispute between Plaintiff and his former spouse, which occurred in New Mexico in December of 1999 and eventually resulted in the issuance of a "no bond hold" felony warrant against him. He contests the validity of the New Mexico warrant; however, it remained outstanding in October 2005. [ECF No. 30 at ¶¶ 37-38, 42-43, 46-52.]

Plaintiff alleges that on October 12, 2005, he was "illegally arrested" by former Defendants Liebel and the Erie Police Department. He was arraigned before Judge Mack and held in order to be extradited back to New Mexico. Plaintiff was released the next day. He alleges that Judge Mack and Magisterial District Court First Ward illegally incarcerated him on October 12 and 13, 2005, because an affidavit had not been produced "by any credible person"

6

showing that he had been charged with committing a crime in New Mexico. Plaintiff is suing Judge Mack in both her individual and official capacities. [Id. at ¶¶ 46, 84, 90-95, 102-09, 120-51, 172.]

On January 15, 2006, Plaintiff was involved in an automobile accident while driving a rental vehicle. Former Defendant Dahlstrand investigated the accident and both parties were allowed to leave the scene without citations being issued. In September of 2006, Plaintiff learned that four traffic citations in fact had been issued after the January 15, 2006 traffic accident.[5] Because the Traffic Court had been closed due to budget cuts, Plaintiff's case/s were transferred to Defendant Magisterial District Judge DiPaolo. Plaintiff pleaded guilty to the charges and entered into a payment plan to pay off the costs and fines of his traffic citations. In October of 2006, he received his first paper copies of the four citations issued from the January 2006 accident. Plaintiff alleges:

> Now that the original yellow copies of the accident specific traffic citations finally surfaced (produced by a Defendant Magisterial District Court Sixth Ward court clerk) the documents and overall sequence of events (apparently originating back to the original October 12-13, 2005 illegal arrest, incarceration and planned extradition and Plaintiff declared by Defendant Erie Police Department to be a "felon") clearly indicated actions should have been taken at much earlier date or time, but were overlooked, forgotten, accidentally missed or intentionally missed by the prior court of jurisdiction, Defendant City of Erie Traffic Court/City of Erie, and the present day local law enforcement, Defendant Erie Police Department. As a result of the Plaintiff's record collection and document assessment effort (i.e. the five subject traffic citations), and the original court of jurisdiction no longer in evidence, the situation reflected the Plaintiff at no time was allowed/granted a plea hearing, for any of the citations, so the Plaintiff attempted to file the necessary documents with Defendant Magisterial District Court Sixth Ward titled 'motion to vacate judgments of convictions' on January 10, 2007; Defendant Magisterial District Court Sixth Ward and Defendant DiPaolo refused to file the documents on January 10, 2007, exhibit 58. Because Defendant DiPaolo's declaratory decree, due process and such violations, the Plaintiff then engaged with the clerk of court at the Pennsylvania Court of

---

[5] The Court of Common Pleas' summary appeal docket number CP-25-SA-0000031-2007 indicates that Plaintiff received the following traffic citations:

| | |
|---|---|
| "Failure to Notify Change in Address" | October 29, 2005 |
| "Drive Wrong Way" | November 21, 2005 |
| "Vehicle Turning Left" | January 15, 2006 |
| "Driving w/o a License" | January 15, 2006 |
| "Oper. Veh. w/o Req'd Finan.Resp." | January 15, 2006 |
| "Careless Driving" | January 15, 2006 |

7

> Common Pleas, about two hours later on January 10, 2007, and after some exchange there was the appearance the Pennsylvania Court of Common Pleas would be willing to file the Plaintiff's documents so Plaintiff could be heard. On January 26, 2007, the Plaintiff filed two documents with the Pennsylvania Court of Common Pleas, titled 'motion for nunc pro tunc – vacate judgments of convictions', in order to be heard on five traffic citations[.]

[Id. at ¶ 53 (emphasis in original).] After Judge DiPaolo and the Magisterial District Court Sixth Ward "refused to file" his documents, Plaintiff filed a request for an investigation with the Defendant Judicial Conduct Board. [Id. at ¶¶ 53-54.] Plaintiff alleges that Judge DiPaolo issued an arrest warrant in retribution and demanded that he pay in full an outstanding balance due for his traffic citations (fees that Plaintiff contends he did not owe). Plaintiff is suing Judge DiPaolo in his individual and official capacities. [Id. at ¶¶ 96-101, 159-97.]

Plaintiff filed a summary appeal to the Court of Common Pleas and on April 25, 2007, it conducted a *de novo* summary appeal hearing with twelve witnesses testifying. The court thereafter found Plaintiff guilty as charged. It sentenced him to fines and costs. No term of incarceration was imposed. Plaintiff pursued an appeal, which the Superior Court dismissed for failure to file a brief.

Plaintiff filed complaints with the Judicial Conduct Board against Judge Mack and Judge DiPaolo. [Id. at ¶¶ 58, 85.] Both disciplinary complaints were dismissed. He alleges that the Judicial Conduct Board and its Chief Counsel, Massa, conspired against him. [Id. at ¶¶ 120-51.] He is suing Defendant Massa in an official capacity. [Id. at ¶¶ 120-51, 166-95.]

### D. The Allegations Against the Commonwealth Defendants

Plaintiff's claims against the Pennsylvania State Police, Lt. Gillelan, and State Police employee Wheeler focus upon the accuracy of criminal and arrest information contained in the Central Repository maintained by the Pennsylvania State Police pursuant to the Criminal History Record Information Act, 18 PA.CONS.STAT. § 9102 et seq. [Id. at ¶¶ 82-89.][6] He refers to

---

[6] Plaintiff claims he attempted to expunge his New Mexico criminal records, which were reflected in the FBI and thus, Pennsyvlania, criminal history records, but was not successful. [ECF
(continued...)

8

correspondence with Lt. Gillelan back and forth in 2007 and 2008 where he disputed certain information contained in his criminal records. Specifically, he contested that he was a "multi-state offender" and had been charged in Erie County in 2005 with "JC9134 Arrest Prior to Requisition," an arrest he claims was illegal. Plaintiff asserts that Pennsylvania State Police, the New Mexico Department of Public Safety and/or the FBI "are providing, creating and disseminating inaccurate data" because he does not meet the legal definition of "offender" and the U.S. Code does not use the term "Multi-Source Offender" or "Multi-State Offender." [Id.]

It appears that Plaintiff is alleging that: (1) he has been subjected to false and malicious charges in the State of New Mexico and in the City of Erie; (2) information concerning those charges was submitted to the National Crime Information Center by New Mexico officials, (3) information concerning those false and malicious charges was then passed on to the FBI and the Pennsylvania State Police; and, (4) the Pennsyvlania State Police, Lt. Gillelan, and Wheeler violated his rights by not altering or removing this information from the central repository in response to his inquiries and challenges. [Id. at ¶¶ 35-38, 104-06.] He also claims the Pennsyvlania State Police, Lt. Gillelan, and Wheeler concealed records and evidence of his actual innocence and their own guilt and that they developed a records-producing protocol that was not accurate with the intent to conceal his innocence. [Id. at ¶¶ 112-17.] He is suing Lt. Gillelan and Wheeler in their official capacities. [Id. at ¶¶ 102-19, 166-95.]

Plaintiff further alleges that in and around early July 2007, someone from the Motor Vehicle Department (headed by Director Dolan) issued a report "to another state jurisdiction" indicating that his Pennsylvania driver's license had been suspended. [Id. at ¶ 61.] He maintains that on May 9, 2007, the Pennsylvania Motor Vehicle Department then demanded that he submit a form "declaring the existence of the alleged Pennsylvania issued driver license" and submit fees to "reinstate" that license. Id. He is suing Director Dolan in her official capacity. [Id. at ¶¶ 102-09.]

---

⁶(...continued)
No. 30 at ¶¶ 77-89.]

9

**E. Plaintiff's Claims**

The following counts remain outstanding in this action:

Count 1  Claims under 42 U.S.C. §§ 1981 and 1983 for violations of Federal and State constitutional and statutory rights

Naming Judge Mack in her individual capacity

Count 2  Claims under 42 U.S.C. §§ 1981 and 1983 for violations of Federal and State constitutional and statutory rights

Naming Judge DiPaolo in his individual capacity

Count 3  Libel, Charged by Information, Malicious Prosecution and Conspiracy

Naming Judge Mack in her official capacity; the Magisterial District Court First Ward; Director Dolan in her official capacity; the Pennsyvlania Motor Vehicle Department; the Pennsylvania State Police; Lt. Gillelan in his official capacity; and, Wheeler in her official capacity

Count 4  Concealment of Records and Fabrication of Inaccurate/False Records in violation of 42 U.S.C. § 1983, §1985(2)(3) and 5 U.S.C. § 552a(d)(e)

Naming Lt. Gillelan and Wheeler in their official capacities; and, the Pennsylvania State Police

Count 5  Seizure and Conspiracy in violation of 42 U.S.C. § 1983

Naming Massa and Judge Mack in their official capacities; the Judicial Conduct Board; and, the Magisterial District Court First Ward

Count 6  Seizure and Conspiracy in violation of 42 U.S.C. § 1985(2) - (Obstruction of Justice)

Naming Massa and Judge Mack in their official capacities; the Pennsylvania Judicial Conduct Board; and, the Magisterial District Court First Ward

Count 7  Seizure and Conspiracy in violation of 42 U.S.C. § 1985(3)

Naming Massa and Judge Mack in their official capacities, the Pennsylvania Judicial Conduct Board; and, the Magisterial

District Court First Ward

Count 8    Seizure and Conspiracy in violation of 42 U.S.C. § 1986

Naming Massa and Judge Mack in their official capacities; the Pennsylvania Judicial Conduct Board; and, the Magisterial District Court First Ward

Count 10   Due Process and Right to Petition the Court Prevented and Harassment in violation of 42 U.S.C. § 1983

Naming Judge DiPaolo in his individual and official capacities; and, the Magisterial District Court Sixth Ward

Count 11   Monell claim in violation of 42 U.S.C. §1983 and 5 U.S.C. §552a(d)(e)

Naming Massa, Judge Mack, Judge DiPaolo, and Lt. Gillelan in their official capacities; the Magisterial District Court First Ward; the Magisterial District Court Sixth Ward; the Pennsylvania Judicial Conduct Board; and, the Pennsylvania Motor Vehicle Department[7]

[Id. at 56-80.][8]

---

[7] In Monell v. Dep't of Social Serv., 436 U.S. 658 (1978), the Supreme Court held that a municipality can be held liable for civil rights violations if the plaintiff establishes that the challenged conduct was a result of a government entity's official policy, custom or practice. Although Plaintiff purports to bring his Monell claim against the individual Defendants, such a claim is only appropriate as to a government entity. Moriarty v. Rendell, No. 3:08-cv-1532, 2009 WL 1458201, at *3 (M.D.Pa. May 26, 2009) ("The Monell standard, however, applies to the liability of municipalities, not individuals."). Nor can a Monell claim proceed against the Judicial and Commonwealth Defendant entities as they are arms of the State and are not municipalities. Barber v. State Police, No 06-1713, 2007 WL 2071896, at *3 (W.D. Pa. July 19, 2007) ("the holding in Monell, that municipalities are persons for purposes of § 1983 is consistent with the holding in Will [v. Michigan, 491 U.S. 58, 71 (1989)] that States are not."). Therefore, Claim 11 should be dismissed for these reasons in addition to the fact that all Defendants are immune from suit, as discussed *infra*.

[8] Count 9 was raised against the City Defendants. That count, in addition to Count 12, was dismissed pursuant to the Court's Memorandum Order dated March 4, 2010 [ECF No. 110].

### F. Discussion

#### 1. Eleventh Amendment Immunity

Generally, the Eleventh Amendment[9] proscribes actions in the federal courts against states, their agencies, and state officials acting within their official capacities. Laskaris v. Thornburgh, 661 F.2d 23 (3d Cir. 1981) (Pennsylvania); Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977) (state agencies); Edelman v. Jordan, 415 U.S. 651 (1974) (state employees acting in their official capacity); Holland v. Taylor, 604 F.Supp.2d 692 (D.Del. 2009) ("As a matter of law, suits against individuals acting in their official capacities are barred by the Eleventh Amendment."). This is a jurisdictional bar subject to only the following two exceptions. A state may be sued in federal court only if (1) the state has waived its Eleventh Amendment immunity, Kentucky v. Graham, 473 U.S. 159 (1985), or (2) Congress has made it unmistakably clear in either the language of a statute or in its legislative history that it is its intention to permit such suits, Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356 (2001). Neither exception applies to this case.

##### (a) The State Entities/Agencies

The Magisterial District Courts for the First and Sixth Wards are part of Pennsylvania's unified judicial system,[10] 42 PA.CONS.STAT. § 301, as is the Judicial Conduct Board, 42 PA.CONS.STAT. § 2101 (the Judicial Conduct Board is "an independent board within the Judicial

---

[9] The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

[10] The "The Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a 'unified judicial system' which includes all of the courts in Pennsylvania." Callahan v. City of Philadelphia, 207 F.3d 668, 672 (3d Cir. 2000), citing Pa.Const. art. V, § 1. "Moreover, the [Commonwealth's] constitution provides that the Pennsylvania Supreme Court will exercise 'general supervisory and administrative authority' over the unified judicial system." Id., citing Pa.Const. art. V, §§ 1, 2, and 10. "All courts and agencies of the unified judicial system, ... are part of 'Commonwealth government' and thus are state rather than local agencies." Id., citing Pa.Const. art. V, § 6(c); 42 PA.CONS.STAT. § 102 (West Supp. 1999); 42 PA.CONS.STAT. § 301 (West 1981).

12

Branch."); Commonwealth ex rel. Judicial Conduct Bd. v. Griffin, 918 A.2d 87, 94-95 (Pa. 2007) (the Judicial Conduct Board is an agency contained within the unified judicial system) (interpreting provisions of Pa.Const.art. V, § 18). As such, they are arms of the Commonwealth and have immunity under the Eleventh Amendment as to all of Plaintiff's claims. Benn v. First Judicial Dist., 426 F.3d 233 (3d Cir. 2005) (Pennsylvania's court entities are Commonwealth entities entitled to Eleventh Amendment immunity); Democracy Rising PA v. Celluci, 603 F.Supp.2d 780, 795 (M.D. Pa. 2009) (Judicial Conduct Board is entitled to Eleventh Amendment immunity); Erb v. Judge, No. 94-2124, 1994 WL 523203, at *1 (E.D. Pa. Sept. 23, 1994), aff'd, 60 F.3d 814 (3d Cir. 1995) (finding the seventh magisterial district to be an arm of the state).

Likewise, all of Plaintiff's claims against the Pennsylvania State Police and the Pennsylvania Department of Motor Vehicles should be dismissed because these entities also are arms of the Commonwealth and are entitled to Eleventh Amendment immunity. See, e.g., Will, 491 U.S. at 66-67; Williams v. Pennsylvania State Police-Bureau of Liquor Control Enforcement, 108 F.Supp.2d 460, 465 (E.D.Pa. 2000) (finding that Pennsylvania State Police, an agency of the Commonwealth, is an alter ego of the State for purposes of the Eleventh Amendment); Durham v. United States, 9 F.Supp.2d 503, 506 (M.D.Pa. 1998) (same); Williams v. Pennsylvania Bureau of Driver Licensing, No. 90-7881, 1991 WL 98874, at *1 (E.D. Pa. June 3, 1991) (Bureau of Driver Licensing immune from suit); Petsinger v. Pennsylvania Dep't of Transp., 211 F.Supp.2d 610, 612-13 (E.D. Pa. 2002) (same).

Accordingly, all claims against the Judicial Conduct Board, the Magisterial District Courts for the First and Sixth Wards, the Pennsylvania State Police, and the Department of Motor Vehicles should be dismissed.

### (b) Individual Defendants Sued In Their Official Capacities

The majority of Plaintiff's claims against the individual Defendants are specifically alleged in his/her official capacity. He raises the following claims for monetary damages against the individual Judicial Defendants (Judge Mack, Judge DiPaolo, and Massa) in their official

13

capacities: Count 3 for Libel, Charged by Information, Malicious Prosecution and Conspiracy against Judge Mack in her official capacity; Counts 5, 6, 7 and 8 for Seizure and Conspiracy under §§ 1983, 1985(2), 1985(3) and 1986 against Massa and Judge Mack in their official capacities; Count 10 for Due Process and Right to Petition the Court against Judge DiPaolo in his official capacity; and Count 11 under Monell against Massa, Judge Mack, and Judge DiPaolo in their official capacities. He raises the following claims for monetary damages against the individual Commonwealth Defendants (Lt. Gillelan, Wheeler, and Dolan) in their official capacities: Count 3 for Libel, Charged by Information, Malicious Prosecution and Conspiracy against Dolan, Lt. Gillelan, and Wheeler in their official capacities; Count 4 for Concealment of Records and Fabrication of Inaccurate/False Records against Lt. Gillelan and Wheeler in their official capacities; and Count 11 under Monell against Lt. Gillelan in his official capacity.

All of these claims against all of these individual Defendants must be dismissed because the Eleventh Amendment precludes monetary damages claims against state officials in their official capacities. See, e.g., Edelman, 415 U.S. 651.[11]

### (c) Summary

Based upon foregoing, the following Defendants should be dismissed from this action because they have Eleventh Amendment immunity: the Judicial Conduct Board; the Magisterial District Court First Ward; the Magisterial District Court Sixth Ward; the Pennsyvlania State Police; the Pennsylvania Motor Vehicle Department; Massa (who is sued only in his official capacity); Lt. Gillelan (who is sued only in his official capacity); Wheeler (who is sued only in

---

[11] While the Eleventh Amendment immunizes state officials sued in their official capacity from monetary damages, such immunity generally does not apply to claims for injunctive relief against state officials to enjoin conduct alleged to be an ongoing violation of the Constitution or federal law. Ex Parte Young, 209 U.S. 123, 129 (1908). In order to overcome immunity, the complaint must allege an ongoing violation of federal law and seek injunctive relief on those specific grounds. Seminole Tribe of Florida v. Florida, 517 U.S. 44, 73 (1996); Verizon Maryland Inc. v. Pub. Serv. Comm'n of Maryland, 535 U.S. 635 (2002). Plaintiff does not do so in the Amended Complaint. His claims against the individual Judicial and Commonwealth Defendants are for monetary relief and are based on their prior actions.

14

her official capacity); and Dolan (who is sued only in her official capacity). Additionally, the Court should dismiss all claims Plaintiff has made against Judge Mack in her official capacity (Counts 3, 5, 6, 8, 7, 11) and all claims he has made against Judge DiPaolo in his official capacity (Counts 10 and 11), because they have Eleventh Amendment immunity from those claims.

### 2. Judicial Immunity

The only remaining claims are those made against Judge Mack and Judge DiPaolo in her/his individual capacity. Specifically, in Count 1 Plaintiff sues Judge Mack in her individual capacity, and in Counts 2 and 10 he sues Judge DiPaolo in his individual capacity. The Judicial Defendants move to dismiss these claims because Plaintiff's claims of damages against Judge Mack and Judge DiPaolo are barred by the doctrine of absolute judicial immunity.

Judicial immunity is an "immunity from suit, not just from an ultimate assessment of damages." Mireles v. Waco, 502 U.S. 9, 11 (1991). Judicial officers are immune from damage suits arising out of their official duties. Stump v. Sparkman, 435 U.S. 349 (1978); Piskanin v. Hammer, No. 04-1321, 2005 WL 613644 (E.D.Pa. Mar. 8, 2005) (applying judicial immunity to "district justice"). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of authority[.]" Sparkman, 435 U.S. at 356. A judge is immune even if the acts were committed during an alleged conspiracy. Dennis v. Sparks, 449 U.S. 24 (1980). Judicial immunity may be overcome only in the rare instance when: (i) the challenged actions were not taken in the judge's judicial capacity; or (ii) the challenged actions, "though judicial in nature, were taken *in the complete absence of all jurisdiction*." Mireles, 502 U.S. at 11-12 (emphasis added). See also Stump, 435 U.S. at 356. The Court of Appeals for the Third Circuit found no distinction should be made "between judges of courts of limited and general jurisdiction" when applying the judicial immunity doctrine. Figueroa v. Blackburn, 208 F.3d 435, 441 (3d Cir. 2000); see also Martin v. Bicking, 30 F.Supp.2d 511, 512 (E.D. Pa. 1998) ("The doctrine of judicial immunity applies equally to courts of limited jurisdiction, such as district justices, as to courts of general jurisdiction.").

As magisterial district judges, Judge Mack and Judge DiPaolo have the jurisdiction to issue warrants and preside as the committing magistrate in most criminal matters pursuant to 42 PA.CONS.STAT. § 1515(a)(4). Further, they have jurisdiction over summary offenses. Id. § 1515(a)(1). Plaintiff's factual allegations are devoted solely to their judicial actions. He makes no factual allegations involving non-judicial actions against them and, as set forth above, he cannot maintain a suit against judges for their judicial actions. Moreover, nothing in the Plaintiff's Amended Complaint can be interpreted as an allegation that Judge Mack or Judge DiPaolo acted outside of their judicial functions or in the clear absence of jurisdiction in making decisions in the proceedings at issue. As magisterial district judges, they had jurisdiction to render their rulings, issue warrants and hold Plaintiff in jail. Even if these rulings were in error or in excess of authority, it was still done with appropriate jurisdiction. Therefore, the doctrine of judicial immunity applies to bar Plaintiff's claims for damages against them.

Accordingly, Plaintiff's remaining claims against Judge Mack and Judge DiPaolo are barred by the doctrine of judicial immunity and should be dismissed.

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended the Court grant the motion to dismiss [ECF No. 86] filed by the Judicial Defendants. It is further recommended that the Court grant the motion to dismiss [ECF No. 105] filed by the Commonwealth Defendants. Because all claims against all Defendants should be dismissed, the Clerk of Courts should be directed to close this case.

In accordance with Fed.R.Civ.P. 72, the parties are allowed fourteen (14) days from the date of service to file written objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. No extensions of time will be granted. Failure to file timely objections may constitute a waiver of appellate rights. See Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

S/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
United States Magistrate Judge

Dated: August 3, 2010